UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN JUNIOR GORDON,

        Plaintiff,                      Case No. 1:19-cv-491

v.                                          Honorable Janet T. Neff

UNKNOWN HARRY et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Harry, Page, and Unknown Party #1 through Unknown Party # 5. The Court also denies Plaintiff's motion to appoint counsel (ECF No. 4).

**Discussion**

I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the following LRF officials: Warden (unknown) Harry; Correctional Officer (unknown) Dorch; Mental Health Case Manager (unknown) Duiker; Prison Counselor (unknown) Ross; Inspectors (unknown) Page and Unknown Party #4; Sergeant Bridgette (last name unknown) (Unknown Party #1); unknown lieutenant (Unknown Party #2); unknown shift commander (Unknown Party #3); and unknown prisoner counselor (Unknown Party #5).

According to the complaint, on July 8, 2017, Plaintiff's cellmate, Randy Deshawn Clay, stabbed Plaintiff with a broken ink pen just above Plaintiff's left eye. Plaintiff began to yell to the third-shift officer, who responded. When the officer opened the door, Plaintiff exited, and the officer saw that Plaintiff was covered with blood. The officer ordered prisoner Clay to go to the officer's station. As Clay walked down the hall, the officer at the station noticed that Clay had thrown an object into the garbage container. Following a search of the container, the officer found the broken pen, which was covered in blood.

Plaintiff was ordered by the sergeant and the lieutenant (Unknown Party # 1 and #2) to sit in the TV room, where he was interviewed. Prisoner Clay was placed in the card room. After his interview, Plaintiff was taken to the hospital, where he received six sutures in his eyebrow. When he returned to the prison, he was placed in segregation. Plaintiff was released from segregation the following day, without having been issued a misconduct charge.

Three weeks before the assault, Plaintiff complained to Defendant Dorch that prisoner Clay had made threats to kill him, and he told Dorch that he was afraid to stay in the same cell as Clay. Defendant Dorch told Plaintiff to leave the officer's station and to write a grievance.

Sometime prior to the attack, Plaintiff also complained to Defendant Ross that Clay had threatened to stab Plaintiff, and Plaintiff asked to be moved from the cell. Plaintiff explained to Ross that Clay was bragging about how he had tried to severely harm his last cellmate, and the assault was one of the reasons Clay's security level had been increased from Level I to Level II. Ross told Plaintiff that he would talk with Clay, but he never did.

The same week he spoke to Ross, Plaintiff spoke to his mental health case manager, Defendant Duiker. Plaintiff told Duiker that inmate Clay had made threats against Plaintiff and had threatened to kill him. Duiker asked Plaintiff to be more specific about the nature of the threats, but Plaintiff told Duiker that she should have access to his file and that the file would speak for itself. Defendant Duiker told Plaintiff that, if he could not be more specific, he should return to his cell.

Following the assault by Clay, Plaintiff filed grievances against Defendants Dorch, Ross, and Duiker, claiming that all three had violated his rights, because, despite knowing about Defendant Clay's assaultive risk and his increased security level, they took no action to protect Plaintiff.

Plaintiff further alleges that during time he was incarcerated at LRF, he witnessed a substantial number of inmate assaults, which should have put Defendants on increased notice of a risk to Plaintiff. Plaintiff specifically references threats between two unknown cellmates in 2013 or 2014 that went unresolved, resulting in the death of one inmate. He also claims that, one month before the assault at issue here, an inmate housed at LRF in Level IV complained that he and his

cellmate were at the point of seriously hurting one another. When officials failed to take sufficient action, one prisoner was suffocated by the other. In addition, Plaintiff alleges that a female correctional officer was attacked by a prisoner after officials had been warned by numerous prisoners that she was at risk. Plaintiff contends that LRF officials made efforts to cover up the incidents. Further, because Plaintiff's assault was not life-threatening, officials advised Plaintiff that they would not be contacting the Michigan State Police.

Plaintiff contends that one day after he submitted his § 1983 claim, he was placed on emergency transfer status. As the result of his transfer, Plaintiff lost his prison job as a lead baker at LRF, which he alleges is his only source of income. He also alleges that his placement in Level-II housing at the Michigan Reformatory is significantly more restrictive than Plaintiff's prior Level-II housing at LRF. Plaintiff alleges that his protected First Amendment activity was the motivating force behind his transfer, though he acknowledges that about two dozen other inmates from his unit were transferred. Plaintiff asserts that the loss of his income and the restrictions on his out-of-cell activities have interfered with his ability to litigate his civil action and have prevented him from paying his initial partial filing fee of $7.11.

Plaintiff seeks substantial compensatory and punitive damages.

II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. All Defendants: Retaliation**

Plaintiff alleges that he was transferred from LRF to MRF, in retaliation for "submitting his 1983 claim . . . ." (Compl., ECF No. 1 at PageID.5.) In the context of the remainder of the allegations and the date on which he filed his § 1983 action, the Court construes

5

the allegation as stating that he was placed on transfer status immediately after he filed his prison grievances. Plaintiff contends that the transfer violated his First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court assumes that Plaintiff has sufficiently alleged protected conduct.

His retaliation claim fails, however, at the second step. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a

foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Here, Plaintiff was transferred from one Level-II facility to another Level-II facility. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. And the mere fact that Plaintiff's privileges at the second institution were somewhat more limited than the first does not support a finding of adverse action. Further, although Plaintiff complains that he lost a good prison job when he was moved, he fails to demonstrate that the loss resulted in impairment to his ability to access the courts. In fact, although Plaintiff alleges that the loss of his LRF job has interfered with his ability to pay the initial partial filing fee in this case, the allegation has no bearing on Plaintiff's ability to access the Court, given that the Court allowed Plaintiff to bring his action *in forma pauperis* without prepayment of the initial partial filing fee.

Moreover, even if his transfer could be considered adverse action, Plaintiff utterly fails to allege facts that support a conclusion that his transfer was motivated by the filing of a grievance. Plaintiff merely concludes that he was subjected to retaliation because he was placed on the transfer list the day after he filed his grievances.

Although in some instances temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). In *Muhammad*, the Sixth Circuit observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). However, in order for temporal proximity to create an issue of fact as to retaliatory motive, such proximity is only sufficient if the evidence is "significant enough." *Id.*

Here, Plaintiff makes only conclusory allegations of retaliation, which are not "significant enough" to create an issue of fact as to retaliatory motive. *Id.* It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts suggesting that the officials he grieved had authority to have him transferred, nor does he provide a factual basis for believing that the officials who authorized the transfer had any special reason to retaliate against him for filing a grievance against another officer. Accordingly, his speculative allegation about his transfer fails to state a retaliation claim against any Defendant.

### B. Defendants Harry, Page and Unknown Party #1 through Unknown Party #5

Plaintiff alleges that, by failing to supervise their subordinates and failing to ask the state police to initiate a prosecution, Defendants Harry, Page and Unknown Party #1 through Unknown Party #5 (the unknown sergeant, inspector, lieutenant, shift commander, and prisoner counselor) violated his rights under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

To the extent that Plaintiff implies that Defendants are liable for failing to urge the state police to investigate or charge prisoner Clay, he fails to state a due process claim. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond*, 476 U.S. at 64-65; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). As a consequence, Plaintiff fails to demonstrate that he had a liberty interest in having Defendants refer his assault to the state police for prosecution.

Moreover, Defendants' negligence in conducting an investigation and referring the matter to the police does not amount to a due process violation. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). To state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350.

Although Plaintiff implies that Defendants' actions were grossly negligent, he recites no factual allegations indicating the sort of arbitrary deprivation that would implicate due process. "The mere allegation of gross negligence—or the use in the pleadings of any other 'vituperative epithet,' for that matter—will avail the plaintiff nothing . . . if the facts alleged are

not sufficient to make out a constitutional violation." *Llewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 349 (6th Cir. 1994); *see also Jones v. Sherrill*, 827 F.2d 1102, 1106 (6th Cir. 1987) ("Negligence does not become 'gross' just by saying so."). Instead, "[t]he facts alleged in support of the legal conclusion of gross negligence must be sufficient to charge government officials with outrageous conduct or arbitrary use of government power." *Id.* Notwithstanding Plaintiff's expressions of outrage at Defendants' failure to refer his case for prosecution, he fails to demonstrate conduct that violates due process.

Further, Plaintiff utterly fails to allege an equal protection claim. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff wholly fails to identify how he was treated differently than any other similarly situated person. Instead, he simply claims that he was denied equal protection. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff makes no other allegations against these Defendants, other than to imply that they failed to supervise their subordinates or failed to investigate his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). There must be more than merely a right to control employees; a plaintiff must show that a defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employees. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Because Plaintiff's claims against Defendants Harry, Page and Unknown Party #1 through Unknown Party #5 are premised on nothing more than respondeat superior liability, his allegations fail to state a claim. *Copeland*, 57 F.3d at 481. Plaintiff's allegations about attacks by other prisoners amount to nothing more than descriptions of isolated instances of violence that occurred over a lengthy period of time, in varying parts of the facility, and involving unknown supervisory officers and other inmates. Nothing about those allegations suggests that any official, much less any Defendant in this action, participated in a pattern of inaction that would suggest that they implicitly authorized or knowingly acquiesced in such attacks. *Peatross*, 818 F.3d at 242-43 (distinguishing between a claim based on respondeat superior and knowing acquiescence). Plaintiff therefore fails to allege actionable conduct by Defendants Harry, Page and Unknown Party #1 through Unknown Party #5 (the unknown sergeant, inspector, lieutenant, shift commander, and prisoner counselor).

For all these reasons, Plaintiff fails to state a claim against Defendants Harry, Page and Unknown Party #1 through Unknown Party #5 (the unknown sergeant, inspector, lieutenant, shift commander, and prisoner counselor).

### C. Defendants Dorch, Ross, & Duiker

Plaintiff alleges that he informed Defendants Dorch and Ross that he feared to remain in his cell, because inmate Clay had threatened to kill him and had boasted of having injured a former cellmate. Plaintiff also alleges that he told Defendant Duiker, his mental health case manager, that he was afraid of the threats Clay had issued, including a threat to kill Plaintiff. None of the three Defendants took action to protect Plaintiff.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that the plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.") Allegations of negligence fall short of the

deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Considering the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff's allegations against Defendants Dorch, Ross, and Duiker are sufficient to state an Eighth Amendment claim.

### III. Motion to Appoint Counsel

Since filing his complaint, Plaintiff has requested a court-appointed attorney. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel therefore will be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Harry, Page and Unknown Party #1 through Unknown Party #5

(the unknown sergeant, inspector, lieutenant, shift commander, and prisoner counselor) will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claim against Defendants Dorch, Ross, and Duiker. Plaintiff's Eighth Amendment claims against Defendants Dorch, Ross, and Duiker remain in the case. In addition, the Court will deny Plaintiff's motion to appoint counsel (ECF No. 4).

An order consistent with this opinion will be entered.


Dated: July 24, 2019                              /s/ Janet T. Neff
                                                                      Janet T. Neff
                                                                      United States District Judge